1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11 | ALLEN CEBRUN AND TOMMIE
CEBRUN,

12 |                    Plaintiffs,                    CASE NO. C10-5742BHS

13 |          v.

14 |                                                   ORDER GRANTING
HSBC BANK USA, N.A., as Trustee under               DEFENDANT HSBC'S
15 | the Pooling and Servicing Agreement dated         MOTION TO DISMISS
as of December 1, 2006, Fremont Home Loan
16 | Trust 2006-E,

17 |                    Defendant.

18

19 |        This matter comes before the Court on Defendant's ("HSBC") motion to dismiss

20 | under Federal Rule of Civil Procedure 12(b)(6). The Court has considered the pleadings

21 | filed in support of and in opposition to the motion and the remainder of the file and

22 | hereby grants the motion for the reasons stated herein.

23 |                            **I. PROCEDURAL HISTORY**

24 |        On December 8, 2010, HSBC filed a motion to dismiss this case under Rule

25 | 12(b)(6) (failure to state a claim). Dkt. 10. On January 3, 2011, Plaintiffs (the "Cebruns")

26 | filed a brief in opposition to HSBC's motion to dismiss. Dkt. 14. On January 7, 2011,

27 | HSBC replied.

28

ORDER - 1

## II. FACTUAL BACKGROUND

This matter arises out of the Cebruns' default on a $143,000 note (deed of trust) that secured their former home. *See* Dkt. 1 (Complaint), Ex. E. The deed of trust was recorded on October 13, 2006. *Id*., Ex. E. Mortgage Electronic Registration Systems ("MERS") is the designated beneficiary under the deed of trust.

On June 3, 2009, MERS assigned its beneficial interest to HSBC. This assignment was made under a Pooling and Servicing Agreement dated December 1, 2006. *Id*., Ex. L. The assignment was recorded. *Id.*

Quality Loan Service Corporation ("QLS") became the successor trustee under the deed of trust on October 6, 2006. QLS issued a notice of default on March 22, 2010. *Id*., Ex. J. On April 23, 2010, QLS issued a notice of trustee's sale, which reflected that the Cebruns defaulted on their home loan and that failure to cure such default would result in a trustee's sale on July 30, 2010. *Id*., Ex. F. The trustee's sale notice was recorded on April 28, 2010. *Id*., Ex. F. Following the July 30, 2010, foreclosure of the Cebruns property, HSBC obtained the property. *Id*., Ex. D.

Based on the foregoing events, the Cebruns filed suit against HSBC. HSBC moves the Court to dismiss the Cebruns' case for failure to state a claim.

## III. DISCUSSION

Rule 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in a plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. As the Court informed Beckwith in its notice (Dkt. 13), he must allege "enough facts to state a claim to relief that is plausible on its face." *See id.* at 1974.

**A.     Rule 8(a)**

HSBC argues that the Cebruns' Complaint violates the notice pleading rules of Fed. R. Civ. P. 8(A) (simple and plain statement). However, HSBC has managed to adequately interpret the Complaint as written. This Court gives some latitude to the Cebruns, as they are proceeding *pro se*.

Therefore, the Court denies HSBC's motion to dismiss on this basis.

**B.     TILA**

Truth in Lending Act ("TILA") claims are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). This statute of limitation runs from the moment the loan transaction is consummated. *See, e.g., King State of California*, 784 F.2d 910, 915 (9th Cir. 1086).

Here, the Cebruns executed their loan agreement on or about October 6, 2006, which is well beyond a year from the date of commencing this action. *See* Complaint; *see also* Complaint, Ex. E. Therefore, Plaintiff's TILA claim is time barred.[1]

**C.     RESPA Claim**

HSBC argues that the Cebruns' allegations of a Real Estate Settlement Procedures Act ("RESPA") claim are time barred. A plaintiff has either one or three years to bring a

---

[1]The equitable tolling provisions of TILA do not apply to this case. *See, e.g., Irwin v. Dep't of Affairs*, 498 U.S. 89, 96 (1990) (applying tolling provisions when a plaintiff filed a defective pleading within the statutory time).

RESPA claim depending on the section of the Act that applies. *See* 12 U.S.C. § 2614 ("Any action pursuant to the provisions of sections 2605, 2607, or 2608 of this title may be [brought] . . . within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation."). These limitation periods begin to run from the date of the RESPA violation, which would have occurred at closing of the transaction, if at all.

From the record, the Court finds that the Cebruns have alleged violations under both §§ 2605 (1 year) and 2607 (3 years). *See* Complaint, Ex. M. Under either limitations period, the Cebruns' claims under RESPA fail because the trancaction closed in October of 2006 and the claims were not brought until October 12, 2010, four years later. Therefore, the Cebruns' RESPA claims are time barred.

HSBC further argues that the applicable RESPA disclosures under 12 U.S.C. § 2605 were, in fact, made to the Cebruns. *See* Complaint, Ex. E (Deed of Trust at 12, information regarding change of loan servicer). HSBC also correctly argues that the Cebruns confuse which entity should have responded to a qualified written request ("QWR") under 12 U.S.C. § 2605(e) (referring to a "loan servicer's" duty). HSBC is the trustee in this instance and did not serve as the loan servicer, which makes § 2605(e) inapplicable. Nonetheless, Litton Loan Servicing, L.P. responded to the QWR. Complaint, Ex. G. Finally, RESPA damages are limited to actual damages. 12 U.S.C. § 2605(f). The Cebruns have not adequately alleged any specific damages to maintain a RESPA claim. *See generally* Complaint.

Therefore, there are several reasons in addition to the time bar that form the basis to dismiss the Cebruns' RESPA claims.

**D.   HOEPA**

Claims under the Home Ownership and Equity Protection Act ("HOEPA") are also subject to a one-year statute of limitations that runs from the date the loan was closed.

*See, e.g., Anderson v. Wells Fargo Home Mortg., Inc.*, 259 F. Supp. 2d 1143, 1148 (W.D. Wash. 2003) (discussing that TILA and HOEPA claims are both subject to a clear one-year time limitation, which commences on the date of closing).

For the same reasons that the Cebruns' TILA claim fails under the one-year limitation, the Cebruns' RESPA claim is also time barred.

**E.     Quiet Title**

In Washington quiet title actions are governed by RCW 7.28.010. The statute provides as follows:

> Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior out of the proper county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title . . . .

Quiet title actions are equitable in nature and do not provide for an award of damages. *See, e.g., Kobza v. Tripp*, 105 Wn. App. 90, 95 (2001).

As discussed above, the Cebruns defaulted on their loan, failed to cure that default, and the property was sold as a consequence of default. This chain of events is uncontroverted and supported by the Cebruns' attachments to their Complaint. *See, e.g.,* Complaint, Ex. E.

Because the Cebruns no longer have a viable claim to the property, they are no longer able to maintain a quiet title action for the property. Additionally, they seek damages for their quiet title claim, which is improper. Therefore, the Cebruns have failed to state a quiet title claim for which relief can be granted.

**F.     MERS**

The Cebruns' claims regarding MERS not being a beneficiary under the security instrument is without merit. To begin with, the Cebruns acknowledge that "MERS is the

beneficiary under this Security Instrument." *See* Complaint, Ex. E. Indeed, Exhibit E

provides in pertinent part as follows:

> Borrower understands and agrees that MERS holds only legal title to
> the interests granted by Borrower in this Security Instrument, but, if
> necessary to comply with law or custom, MERS (as nominee for the Lender
> and Lender's successors and assigns) has the right: to exercise any or all of
> those interests, including, but not limited to, the right to foreclose and sell
> the Property; and to take any action required of Lender including, but not
> limited to, releasing and canceling this Security Instrument.

*Id.*

Moreover, courts consistently hold, when evaluating similar deeds, that MERS

acted as a beneficiary and possessed the rights set out above. *See, e.g., Vawter v. Quality*

*Loan Service Corp. of Washington*, 707 F. Supp. 2d 1115, 1125 (W.D. Wash, April 22,

2010) (dismissing claim on basis that MERS was properly a beneficiary and entitled to

effect sale of the defaulted-upon property). Taking the facts alleged as true, the Cebruns

cannot establish a claim under their theory regarding MERS.

**G.   The Cebruns' Late-Filed Affidavits**

The Court disregards the Cebruns' late-filed affidavits. To begin with, they are

matters outside the record for purposes of deciding the instant motion to dismiss. The

affidavits are also improperly filed as new affidavits filed in opposition to a motion to

dismiss. *See, e.g., U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (holding that it would

have been error for the court to have considered a declaration and exhibit attached to the

response in opposition to a motion to dismiss without converting the motion to one for

summary judgment).

Here, the affidavits do not present matters for which the Court could take judicial

notice, they are not properly before the Court on a motion to dismiss, and the Court will

not convert this matter to a motion for summary judgment as no basis has been shown for

the Court to do so in this case.

Therefore, the Court declines to consider these late, improperly filed affidavits.

1

### IV. ORDER

2      Therefore, it is hereby **ORDERED** that HSBC's motion to dismiss the Cebruns'

3  complaint in its entirety **with prejudice** is **GRANTED** as discussed herein. This matter is

4  closed.

5      DATED this 2nd day of February, 2011.

6

7

8                                          BENJAMIN H. SETTLE
                                           United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 7